IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SHELTON MYERS                                                              PLAINTIFF

VS.                                                    CIVIL ACTION NO. 2:09-CV-236-KS-MTP

SHERIFF DANNY RIGEL AND
CAPTAIN MIKE HARLIN                                                      DEFENDANTS

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on a Motion for Preliminary Injunction [4] filed by Plaintiff. Having considered the submissions of the parties, the transcript of the omnibus hearing held on April 23, 2010 pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and all matters made a part of the record of this case, as well as the applicable law, the undersigned is of the opinion that the motion should be denied.

Factual Background

Plaintiff filed suit *pro se* on November 18, 2009 pursuant to 42 U.S.C. § 1983. At the time Plaintiff's claims arose, he was being housed at the Lamar County Jail (the "Jail"), having been arrested and charged with murder and two counts of aggravated assault, as well as a probation violation.[1] As clarified by his sworn testimony at the *Spears* hearing,[2] Plaintiff asserts claims arising out of his confinement in segregation at the Jail[3] and the resulting restriction of

---

[1] Plaintiff is still housed at the Jail and is awaiting trial on the murder and aggravated assault charges. Trial is currently set for September 2010.

[2] *See Hurns v. Parker*, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

[3] Plaintiff is housed in A Block, which is the cell block for inmates on lockdown, segregation, protective custody and medical status. *See* Affidavit of Michael Harlin (Exh. B to Response to Motion) ¶ 4. This is the only cell block at the Jail with individual cells for male

privileges.

According to Plaintiff, when he arrived at the Jail on April 18, 2006, he was automatically placed in segregation. At some point thereafter, Plaintiff heard that Defendant Mike Harlin, the Jail Administrator, was planning to move him to the general population and on June 8, 2006, Plaintiff wrote a letter to Harlin explaining that because of his mental problems[4] he could not be in a dormitory-style and, therefore, he wished to remain in segregation. It is undisputed by the parties that Plaintiff has remained in segregation since his arrival at the Jail, per his request.[5] Indeed, Plaintiff concedes that he wants to be housed in segregation.

Plaintiff claims that prior to October 2009 he was receiving various privileges in segregation, such as visitation, canteen, and yard and dayroom time. However, in October 2009, new regulations were put into place at the Jail regarding privileges for inmates in Cell Block A. Pursuant to these regulations, inmates in Cell Block A receive yard call twice a day for two hours and scheduled time for religious services, but are not permitted visitation (other than with legal counsel), canteen privileges or television. *See* Harlin Aff. ¶¶ 8, 11. Plaintiff concedes that all

---

inmates and, therefore, is the only place where male inmates can be segregated. *See id.*

[4] Plaintiff avers that he has been diagnosed with panic disorder and other unspecified mental problems.

[5] In their response to the motion, Defendants stated that Plaintiff was being housed in segregation because of his "alleged medical condition as well as the fact that he was categorized as a suicide risk, has threatened harm to fellow inmates and threatened a jail officer." *See* Response [18] at 2; *see also* Response at 6. However, at the *Spears* hearing, Defendants' counsel represented that although there had previously been security and suicide concerns with respect to Plaintiff, such concerns were no longer an issue, and that Plaintiff can be placed into the general population if he wants to be. Thus, according to Defendants' counsel, the only reason Plaintiff is currently being housed in segregation is because he has requested it.

inmates in segregation are denied these privileges, regardless of why they are in segregation.[6]

In this lawsuit, as well as in the instant motion, Plaintiff asserts claims for violation of his due process and equal protection rights, as well as violation of the Americans with Disabilities Act (ADA). Plaintiff claims that although he is housed in segregation at the Jail by his own request, he should be afforded the same privileges that inmates in the general population receive, to the extent possible. Specifically, Plaintiff seeks an order directing Defendants to: refrain from housing him in an isolation cell 22-23 hours a day; allow him to receive all privileges enjoyed by the general population, including access to television, full commissary purchases and family visitation; and to refrain from discriminating against him and to grant him equal access to "all reasonable Lamar County Jail facility programs and activities."

## Analysis

A party requesting a temporary restraining order or preliminary injunction must demonstrate each of the following: 1) a substantial likelihood of success on the merits; 2) a substantial threat that failure to grant the injunction will result in irreparable injury; 3) the threatened injury must outweigh any damage that the injunction will cause to the adverse party; and 4) the injunction must not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell,* 248 F.3d 411, 419 n.15 (5th Cir. 2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune,* 534 F.2d 1115, 1121 (5th Cir. 1976).

Plaintiff has failed to make the required showing. Plaintiff's claims are before the court

---

[6] Plaintiff pointed out, however, that unlike him, most inmates in segregation are not there for a long period of time.

pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

Plaintiff claims that his due process rights are being violated as a result of the denial of certain privileges while he is being housed in segregation. However, liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Plaintiff has failed to allege a restraint which imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. "[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest." *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995); *Hurns v. Parker*, 1998 WL 870696, at * 1 (5th Cir. Dec. 2, 1998). Moreover, Plaintiff has no protected liberty interest in his security classification, and has no right to facility privileges. *See Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003) (stating that the Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification"); *Wilson v. Bundy*, 976 F.2d 957, 958 (5th Cir. 1992) (citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988)) ("A prison inmate does not have a protectable liberty or property interest in his custodial classification."); *Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir. 1997); *Lewis v. Dretke*, 54 Fed. Appx. 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim

challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges); *Williams v. Geo Group, Inc.*, 2008 WL 2724889, at * 1 (S.D. Miss. July 10, 2008) ("The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life."). Accordingly, Plaintiff's allegations regarding segregation and the resulting denial of privileges fail to amount to a constitutional violation.

Moreover, "[p]rison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990); *see also Bell v. Wolfish*, 441 U.S. 520, 547-48 (5th Cir. 1979) (holding that it is well-settled that prison officials are given wide latitude in the day-to-day operations of the prison system, and the courts are reluctant to interfere unless presented with substantial evidence of patently unreasonable conduct). As set forth in Captain Harlin's affidavit, it is simply not feasible to allow inmates housed in A Block to enjoy all of the privileges given to the general population - in particular, visitation - while still maintaining their segregated status.[7] *See* Harlin Aff. ¶¶ 9-10.

As for Plaintiff's equal protection claim, in order for him to prevail he must show that he has been "intentionally discriminated against...because of membership in a protected class," or

---

[7] Defendant Harlin explains that the Jail has a six-booth visitation room that allows approximately six inmates at a time to have visits. Visitation is conducted seven days a week, but it is still difficult to meet the visitation demands for all of the 130 inmates housed at the Jail. Thus, given that the Jail already has trouble meeting the existing visitation demands, it is not feasible to also allow individual visitation for each of the inmates in segregation. *See* Harlin Aff. ¶ 10.

"has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Nance v. New Orleans & Baton Rouge Steamship Pilots' Ass'n*, 174 Fed. Appx. 849, 854 (5th Cir. Apr. 10, 2006) (citations omitted). Alternatively, Plaintiff may show that a government policy or procedure was selectively enforced against him, by showing that "the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Id.* (citation omitted).

Plaintiff has not shown that he was intentionally discrimination against or treated different than others similarly situated, nor has he shown that a policy was selectively enforced against him. To the contrary, Plaintiff concedes that *all* inmates in segregation - regardless of why they are there - receive the same privileges. Nor does Plaintiff allege that there are any inmates at the Jail similarly-situated to him - *i.e.*, suffering from mental disabilities - who are treated any differently than him. *See Tauzier v. LeBlanc*, 2010 WL 1731200, at * 2 (E.D. La. Apr. 15, 2010), *Report and Recommendation adopted*, 2010 WL 1731176 (E.D. La. Apr. 28, 2010) (finding no equal protection violation where all inmates housed in administrative segregation unit were denied privileges in question).

Finally, Plaintiff also claims that his rights under the ADA have been violated. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 28 U.S.C. § 12132. In order to establish a cause of action under Title II of the ADA, Plaintiff must demonstrate:

6

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against[8] by the public entity; and (3) that such exclusion, denial of benefits or discrimination is by reason of his disability.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004), *reh'g & reh'g en banc denied*, 130 Fed. Appx. 705 (5th Cir. Jan. 5, 2005).

Even assuming *arguendo* that Plaintiff has established that he is a "qualified individual with a disability" within the meaning of the ADA, he has failed to establish that he is being excluded or discriminated against on account of his disability. The reason Plaintiff's privileges are being curtailed is because he is housed in a segregation unit, and the reason he is housed in a segregation unit is because he has requested to be - not because of his alleged disability. Moreover, Defendants cannot make any other reasonable accommodations for Plaintiff, in terms of privileges, because as noted *supra*, it is simply not feasible to allow inmates housed in A Block to enjoy all of the privileges given to the general population - in particular, visitation - while still maintaining their segregated status. *See* Harlin Aff. ¶¶ 9-10.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Plaintiff's Motion for Preliminary Injunction [4] be denied.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days

---

[8] Under the ADA, "discrimination" can include "failure to make reasonable accommodations to the needs of a disabled person." *McCoy v. Texas Dep't of Criminal Justice*, 2006 WL 2331055, at * 7 (S.D. Tex. Aug. 9, 2006) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 692 (5th Cir. 2004)).

after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 25th day of May, 2010.

s/ Michael T. Parker  
United States Magistrate Judge