**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**SHELTON MYERS**                                                                      **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 2:09cv236-KS-MTP**

**SHERIFF DANNY RIGEL**                                         **DEFENDANTS**
**AND CAPTAIN MIKE HARLIN**

## REPORT AND RECOMMENDATIONS

This matter is before the Court on the Motion for Summary Judgment by defendants Danny Rigel and Mike Harlin [31]. Plaintiff responded [36] to the motion, and Defendants replied [38]. Having reviewed the submissions of the parties and the applicable law, and being fully advised in the premises, the undersigned recommends that the Defendants' motion [31] be **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff is a pretrial detainee at the Lamar County Jail, as was the case when his *Spears* hearing[1] was held and Omnibus Order [24] entered. He is awaiting trial on a charge of murder and two accounts of aggravated assault.[2] Plaintiff filed his civil rights Complaint [1] on November 18, 2009 grounded on 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). His primary claim is that his due process rights were violated because he is confined in the segregation unit, even though he requested such housing.[3] Plaintiff was satisfied with his

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2]Plaintiff was arrested April 18, 2006.

[3]According to Plaintiff, ". . . I cannot function in dormitory-style settings, and I cannot function in double celling." [31]-1 at 13. He attributes these inabilities to function to his "mental

situation until October 2009, when

> the Lamar County Jail instituted new governing regulations. As a part of those regulations, inmates housed in A Block [the only block containing individual cells and which is suitable for segregating male inmates] receive yard call twice a day and scheduled time for religious services. Inmates housed in A Block are not permitted visitation (other than with legal counsel), food items from the canteen or access to television.

[31]-5 at 2.[4] According to Plaintiff, what makes the due process violation is that he allegedly suffers from a disability which is protected from discrimination by the ADA. The ultimate relief he seeks is to enjoy the privileges that are not available to those confined in the segregation unit but are enjoyed by those in the general population[5]–again, the former confinement being his choice and the latter the one that he does not wish to have. His claims are directed at defendant Danny Rigel, who is the Sheriff of Lamar County, and Mike Harlin, who is the administrator in charge of the jail.

This is not the first time the Court has written on the substance of this cause of action. In addition to the Omnibus Order [24], a Report and Recommendation [25] ("R & R") was entered with respect to Plaintiff's request for a preliminary injunction. This R & R recommending denial of a preliminary injunction was adopted [37] by the Court. The same issues before the Court on Plaintiff's request for a preliminary injunction are now before the Court pursuant to Fed. R. Civ. P. 56. While the facts outlined in the R & R [25] and Order [37] addressing the preliminary

---

history." *Id.*

[4]The reasons for this regulation will be discussed in detail *infra*.

[5]Specifically, access to additional food items from the canteen; personal visitation; and extra day room time. As Plaintiff put it at the *Spears* hearing, "I understand that I cannot get all of the privileges that general population gets, but the privileges that I [was] getting." [31]-1 at 12.

injunction are essentially the same as those set forth in Defendants' motion for summary judgment, the analysis is different. Accordingly, discussion will be limited to the facts and law relevant to the inquiry under Fed. R. Civ. P. 56.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[6] Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id*.

This Court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this Court must decide, and in making that decision, it must "draw

---

[6]The amendments to Fed. R. Civ. P. 56 became effective December 1, 2010. According to an Excerpt from the Report of the Judicial Conference, Committee on Rules of Practice and Procedure, the amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-judgment motions, to make the procedures more consistent across the districts, and to close the gap that has developed between the rule text and actual practice. *The . . . amendments are not intended to change the summary-judgment standard or burdens.*" (Emphasis supplied).

inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id*. at 712 (quoting *U. S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  Thus, "[c]onclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## **ANALYSIS**

### Denial of Due Process

Plaintiff's claims are before the Court pursuant to 42 U.S.C. § 1983.  However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981).  Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* at 683 (quoting 42 U.S.C. § 1983).

As for Plaintiff's custody status, "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Thus, conditions of confinement may "constitute deprivations of liberty without due process if they amount to punishment of the detainee." *Mayfield v. Ellett*, 102 F.3d 549, 1996 WL 670432 at *4 (5th Cir. 1996) (quoting *Harris v. Angelina County*, 31 F3d. 331, 334 (5th Cir. 1994)). "[A] pretrial detainee's due process rights are said to be as least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare*, 74 F.3d at 639 (internal quotations and citation omitted).

The Fifth Circuit applies the *Bell v. Wolfish*[7] test when evaluating a pretrial detainee's challenges to "general conditions, practices, rules, or restrictions of pretrial confinement." *Mayfield,* 1996 WL 670432 at *5; *see also Hare*, 74 F.3d at 643; *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1392 (5th Cir. 1995), *reh'g en banc* 79 F.3d 478 (5th Cir. 1996). Under the reasonable relationship test set forth in *Bell*, "a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Hare*, 74 F.3d at 640. However, "the Constitution is not concerned with a *de minimis* level of imposition on pretrial detainees." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004), *aff'd*, 177 Fed. Appx. 377 (5th Cir. 2005), *cert. denied*, 547 U.S. 1055 (2006) (citing *Bell*, 441 U.S. at 535).

On the other hand, when a pretrial detainee challenges a jail official's "episodic acts or omissions, the *Bell* test is inapplicable, and hence the proper inquiry is whether the official had a culpable state of mind in acting or failing to act." *Mayfield*, 1996 WL 670432, at *5 (quoting

---

[7]441 U.S. 520 (1979).

*Hare*, 74 F.3d at 643) (adopting a standard of subjective deliberate indifference as the measure of culpability for pretrial detainees' claims of episodic acts or omissions). *See also Farmer v. Brennan*, 511 U.S. 825 (1994). Thus, liability for an episodic act or omission attaches only when a prison official's act or failure to act amounts to subjective deliberate indifference to a pretrial detainee's rights. *See Edward v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000); *Hare*, 74 F.3d at 648.

This is not a case in which Plaintiff asserts that Defendants have been deliberately indifferent to his medical needs. Indeed, Defendants accommodated Plaintiff's request to be placed in the segregation unit,[8] and at the *Spears* hearing conceded that Plaintiff was "being housed in segregation because he's requested that for an alleged medical condition." [31]-1 at 36. *See also id.* at 40-41 ("[T]he basis of his being segregated is his demand. If today he walks back to Lamar County and says he wants to go to general population, he'll be put in general population."). Plaintiff maintains that "if I didn't have the condition, I would be in population." *Id.* at 37. *See also* [31]-9 at 2 ("I shouldn't be moved and I do not want to be moved.") and [36] at 12 (". . . Plaintiff has made it totally clear that his reasons for being housed in segregation is strictly because of his [alleged] mental disorder."). The undersigned summarized it at the *Spears* hearing in the following way: "[Y]ou are in separate custody as a result of your own request that's resulted in you being in a unit where privileges are more restricted than you'd like, and that's being applied across the board." [31]-1 at 24. Plaintiff wishes to be "exempt and

---

[8]In an inmate request form dated June 8, 2006, Plaintiff acknowledged his understanding that "I'm in no position to say where I want to be housed." [31]-3 at 1. In the same form, Plaintiff described periods of breaking down and crying uncontrollably. Although Plaintiff was not thinking of hurting anyone, he believed it dangerous to place him in proximity to other inmates and did not want to be put in a position where others could get hurt. *Id*. at 2.

accommodated, according to everybody else in population, to be treated as everyone else." *Id*. at 31.

The reasons given by Defendants for institution of the October 2009 governing regulations of the Lamar County Jail are:

> The Lamar County Jail maintains an inmate population of approximately 130 inmates. To facilitate visitation, the Jail has a six booth visitation room which allows approximately 6 inmates at a time to visit with citizens. In order to meet visitation demands, the Jail runs visitation seven days a week. The Lamar County Jail cannot maintain the segregated status of those in A Block and run an orderly visitation as to do so would require inmates from Cell Block A to be given visitation alone. Given that the Jail already has difficulty meeting visitation demands for those in general population, providing visitation for those in segregated status is not feasible and will interfere with the orderly administration of the Jail.

Affidavit of Michael Harlin [31]-5 at 2-3.

Plaintiff concedes that the October 2009 regulations resulted in the loss of certain privileges for all inmates housed in the segregation unit. [36] at 3. This is a regulation that applies to everyone in a neutral fashion. *See* [31]-1 at 22. It is recognized that "[p]rison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990); *see also Bell*, 441 U.S. at 547-48 (holding that it is well-settled that prison officials are given wide latitude in the day-to-day operations of the prison system, and courts are reluctant to interfere unless presented with substantial evidence of patently unreasonable conduct). Defendant Harlin's affidavit establishes a legitimate government purpose that is not patently unreasonable. Allowing residents in Cell Block A to enjoy all privileges given to the general population–in particular visitation–while still maintaining Cell Block A's segregated status is not feasible.

Plaintiff argues that he is in some way different from others in the segregated unit because he is housed there longer than others. *See, e.g.,* [31]-1 at 23. However, the length of Plaintiff's incarceration is not a decision within the defendants' control. Likewise, Plaintiff's demand to be segregated was not created by defendants. Defendants' actions were not deliberately indifferent to Plaintiff's rights.

ADA

As a preliminary matter, Plaintiff cannot recover from either defendant in their individual capacities under the ADA. *See Gonzales v. City of Corpus Christi*, 2005 WL 3058168, at *7 (5th Cir. 2005) (holding that Title II of the ADA does not contemplate holding officers liable in their individual capacities); *Shabazz v. Texas Youth Comm'n*, 300 F. Supp. 2d 467, 473-74 (N.D. Tex. 2003). It is also undisputed that state prisons fall within the definition of "public entity" under the ADA. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

"The ADA is a federal anti-discrimination statute designed 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting *Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999); footnote omitted). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 28 U.S.C. § 12132. In order to establish a cause of action under Title II of the ADA, Plaintiff must establish:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or

> activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits or discrimination is by reason of his disability.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).

42 U.S.C. § 12102 defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." While the ADA does not define substantially limiting or major life activity, courts have looked to regulations of the Equal Employment Opportunity Commission for guidance. 29 C.F.R. § 1630.2(j)(1)(i)-(ii) defines "substantially limits" as

> unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Cf. Bridges v. City of Bossier*, 92 F.3d 329 (5th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997) (discussing substantially limiting impairment); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (5th Cir. 1995) (same). "The term 'major life activities' means 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Watson v. Texas Youth Commission,* 269 Fed. Appx. 498, 500 (5th Cir. 2008). *See also Dutcher*, 53 F.3d at 726 n.7 (list is not exhaustive and could include lifting, reaching, sitting, or standing).

While "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual," *Deas v. River West, L.P.*, 152 F.3d 471, 478 (5th Cir. 1998) (internal quotations and footnote omitted), it is interesting that Plaintiff uses various

descriptions for what he allegedly suffers from–as a panic disorder [31]-1 at 18; panic disorder with agoraphobia, [36] at 13; condition, [31]-1 at 37; ailments, *id.* at 20; medical problem, [36] at 5; mental condition, *id.* at 8; and mental disorder(s), *id.* at 5, 8, 10, 12.  However, Plaintiff fails to establish that he has an impairment that substantially limits his major life activities; therefore, he does not have a disability under the ADA.  *See Mosher v. Texas Department of Criminal Justice*, 281 F.3d 1278, 2001 WL 1692423 (5th Cir. 2001) (prisoner's Bipolar I Disorder corrected by medication not a disability under ADA); *Clark v. Livingston*, 2009 WL 2827991 at *4 (S.D. Tex. 2009) (whether plaintiff did or did not control diabetes, he did not show that his condition significantly impaired a major life activity; lists cases where 5th Circuit explained that not every impairment, even if severe, is a disability–samples included hemophilia, ankle problems, breast cancer, and high blood pressure).

Plaintiff has only established that his condition prevents him from engaging in certain privileges at the Lamar County Jail due to his demand to be housed in the segregation unit, privileges that are also not allowed to all others in the same unit.  He has not established his inability to perform a major life activity.  Any loss of the privileges Plaintiff desires is not due to any real or perceived disability, but is simply a function of where he is housed.

## RECOMMENDATION

Plaintiff's claims do not rise to the level of constitutional violations, nor do they constitute a  violation of the ADA.  He has failed to show a real controversy supported by material facts. For the reasons stated above, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment [31] be **GRANTED**, and that this matter should be dismissed with prejudice.

**NOTICE OF RIGHT TO OBJECT**

In accordance with the rules and 28 U.S.C. § 636(b), any party within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. 28 U.S.C. § 636(b)(1); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).[9]

THIS the 4th day of February, 2011.

                                                                s/ Michael T. Parker
                                                                United States Magistrate Judge

---

[9]*Douglass* referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.